## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK DONOFRIO,** | : | |
|   Norristown, PA 19401 | : | **CIVIL ACTION NO. __** |
| *on behalf of himself individually* | : | |
| *and on behalf of those similarly situated,* | : | **ADEA COLLECTIVE ACTION** |
| | : | |
|    **Plaintiff,** | : | **JURY TRIAL DEMANDED** |
| | : | |
|    **v.** | : | |
| | : | |
| **IKEA US RETAIL, LLC** | : | |
|   f/k/a IKEA US EAST LLC, | : | |
|   d/b/a IKEA | : | |
|   420 Alan Wood Road | : | |
|   Conshohocken 19428, | : | |
| | : | |
|    **Defendant.** | : | |

## COMPLAINT

### I.    PRELIMINARY STATEMENT.

Plaintiff, Frank Donofrio, is a current employee of Defendant, IKEA US Retail, LLC formerly known as IKEA US East LLC, and doing business as IKEA (and referred to hereinafter as "IKEA" or "Defendant"), who has been discriminated against by IKEA because of his age (currently 54). Mr. Donofrio has for years been an outstanding hourly retail "coworker" who, notwithstanding excellent performance evaluations, has been dismissed by IKEA management as lacking potential, denied leadership development opportunities, and rejected for promotion to management level positions.

As set forth herein, IKEA has engaged in a systematic pattern and practice of denying advancement opportunities to its hourly retail "coworkers" age 40 and over because of their age. The so-called "IKEA way" is a corporate culture that favors the development and advancement of younger employees into management positions while denying such opportunities to its older

1

employees.  Without limitation:  IKEA's preference for the advancement of its younger employees is openly expressed at the highest level; IKEA managers openly express age bias and ageist stereotypes; complaints of age discrimination expressed to the highest level of the company are not remediated; and older workers are dismissively labeled, without good or apparent basis, as lacking in "potential."

Plaintiff Donofrio has been adversely affected by Defendant's pattern and practice of age discrimination and its policy of denying advancement opportunities based on an age biased labeling of those with and without "good" or "high" potential, including Defendant's denying him leadership development opportunities and rejecting him for promotion.  Plaintiff now brings this action against IKEA for violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), as a collective action pursuant to the ADEA, 29 U.S.C. § 626(b), incorporating section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), on behalf of himself individually and on behalf of those similarly situated: *i.e.,* all current hourly retail employees of IKEA who, since January 20, 2016, were age 40 or over and denied leadership development opportunities and/or rejected for promotion ("Older Coworkers") (Counts I, II, and III).  In that regard, Plaintiff seeks an Order providing that Notice of this lawsuit be given to each Older Coworker.  In addition, Plaintiff seeks injunctive and declaratory relief, damages, including compensatory and liquidated damages, attorney's fees and costs, and all other relief under the ADEA and any other relief this Court deems appropriate.

In addition, Plaintiff brings this action on an individual basis only for Defendant's violation of the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA") (Count IV).

## II.    PARTIES.

1.      Plaintiff, Frank Donofrio, is an individual and citizen of the state of Pennsylvania, residing therein in Norristown, Pennsylvania 19401.

2.      Plaintiff was born in September 1963, and is currently age fifty-four (54).

3.      Plaintiff has been an employee of IKEA since in or about February, 2011.

4.      Defendant, IKEA US Retail, LLC formerly known as IKEA US East LLC, and doing business as IKEA ("IKEA" or "Defendant"), is a limited liability company with headquarters and a principal place of business located in Conshohocken, Pennsylvania.

5.      At all times material hereto, IKEA has been engaged in an industry affecting interstate commerce and has acted as an "employer" within the meaning of the antidiscrimination laws at issue.

6.      At all times material hereto, IKEA employed more than twenty (20) people.

7.      At all times material hereto, IKEA acted by and through its authorized agents, servants, workmen, and/or employees within the course and scope of their employment with IKEA and in furtherance of the business of IKEA.

8.      At all times material hereto, Plaintiff has been an employee of IKEA within the meaning of the antidiscrimination laws at issue.

## III.    JURISDICTION AND VENUE.

9.      The causes of actions alleged herein arise under the ADEA, as amended, 29 U.S.C.  § 621, *et seq.*, and the PHRA, as amended, 43 P.S. § 951, *et seq.*

10.      The District Court has jurisdiction over the ADEA claims (Counts I, II, and III) pursuant to 29 U.S.C. § 626(c) and 29 U.S.C. § 1331.

11.     The District Court has jurisdiction over the PHRA claim (Count IV) pursuant to 28 U.S.C. § 1367.

12.     The District Court has personal jurisdiction over Defendant because, *inter alia,* Defendant maintains a principal place of business and is at home in Pennsylvania, the actions giving rise and/or related to this suit occurred in Pennsylvania, and/or IKEA has consented to the jurisdiction of this Court through its appointment of an authorized agent in Pennsylvania to accept service of process.

13.     Venue is proper under 28 U.S.C. § 1391(b).

14.     On or about November 15, 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15.     Attached hereto, incorporated herein and marked as Exhibit "A" is a true and correct copy of Plaintiff's November 15, 2016 Charge of Discrimination (with minor redactions for purposes of electronic filing of confidential/identifying information).

16.     More than 60 days have passed since Plaintiff filed his first Charge of Discrimination with the EEOC.  Further, the EEOC on or about November 29, 2017, closed its file on Plaintiff's Charge of Discrimination and issued to him a "Notice of Right to Sue," which is attached hereto as Exhibit "B."

17.     More than one year has passed since Plaintiff's Charge of Discrimination was dual-filed with the PHRC.

18.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

IV.    FACTUAL ALLEGATIONS SUPPORTING CLAIMS.

*Policy of Denying Development and Advancement Opportunities to Older Coworkers*

19.    The IKEA Group is an international furniture retail chain which, through its controlled subsidiaries, operates more than 50 retail stores and employs more than 15,000 people in the United States.

20.    Defendant is an indirect, controlled subsidiary of the IKEA Group.

21.    Defendant's employees are subject to the same centrally controlled Human Resources policies.

22.    Defendant's employees are subject to the same centrally controlled employment policies.

23.    Defendant's employees are subject to the same centrally controlled strategies, processes and policies for recruitment, evaluation, development, and advancement.

24.    Defendant's policies in connection with recruitment, evaluation, development, and advancement are infected with age bias.

25.    Defendant maintains a corporate culture of age bias that starts at the top and affects its employment decisions.

26.    Defendant's literature openly expresses that the company considers age in its employment decisions.

27.    Defendant's managers openly express age bias.

28.    As part of its business model, IKEA touts its management and leadership training programs aimed at "high" potential employees, and that most of its managers are in their early thirties.

29.    IKEA management openly expresses its preference for younger employees.

30.     IKEA's age bias and preference for younger employees is expressed and implemented in its policies and practices.

31.     IKEA communicates to its managers/decision-makers the company's goal of retaining and promoting young employees.

32.     IKEA makes decisions based on stereotypes of older workers as having less "potential" than younger ones.

33.     IKEA recruits young employees for management positions as "future leaders."

34.     In an interview published in August 2015, the IKEA Group's then U.S. recruitment and succession manager, Cathy Blair, publicly promoted IKEA's hopes and plans to attract "recent college graduates" into management level positions and develop an internship programs as a way of developing "future leaders" of IKEA.

35.     IKEA management has openly expressed that IKEA has hired and/or promoted younger individuals into management positions because they are "young and energetic."

36.     IKEA management has openly expressed age-biased stereotypes.  For example, and without limitation, in connection with its recent reorganization, a young Sales Manager expressed at a group meeting that it would be a challenge to retrain older employees.

37.     IKEA provides preferential training, placement, and advancement opportunities to its younger employees.

38.     IKEA has engaged in a company-wide, institutional policy of denying training, development, and advancement opportunities to its older employees.

39.     IKEA has a policy by which it identifies the "potential" of its employees, and makes development and advancement decisions based on its subjective labeling of an employee's "potential."

40.     IKEA identifies "potential" based on subjective factors.

41.     IKEA's identification of an employee's potential is vulnerable to age bias.

42.     IKEA's literature indicates that its identification of an employee's potential is based on non-objectively measured factors subject to stereotypes regarding older workers, including, without limitation, that they lack energy, will want to retire and not remain in the workforce for many years, and that they lack learning agility.

43.     In its literature regarding the assessment of an employee's potential, IKEA openly employs and expresses age biased stereotypes. For example, and without limitation, IKEA ascribes "youthful enthusiasm" to a "high potential" employee.

44.     In connection with its performance evaluation process, IKEA managers rate, and Human Resources sign off on, employees on their "potential."

45.     Managers are asked to evaluate their employees and assign to them an "identified potential" of either "high potential," "good potential," or "same level."

46.     An employee's performance evaluation does not indicate the criteria or process by which a manager determines an employee's "identified potential."

47.     A manager's determination of an employee's "identified potential" does not appear to have any correlation to whether the employee meets or even exceeds expectations in his or her current position.

48.     A manager's determination of an employee's "identified potential" is entirely subjective and vulnerable to age discriminatory bias.

49.     IKEA's literature on assessing potential engages in and promotes age biased stereotypes. For example, and without limitation, the literature gives two examples of employees who "exceed expectations" as far as their performance, one of whom has a rating of "high

potential," and the other as "same level." The example of the "high potential" high performing employee demonstrates "youthful enthusiasm," while the "same level" high performing employee is described as having been there longer and "likes a stable environment."

50.     A manager's determination of an employee's "identified potential" is infected with age bias.

51.     IKEA's age biased determination of an employee's identified potential impacts the employee's opportunities for training, development, and advancement.

52.     For example, and without limitation, IKEA's literature states that for an employee to have vertical growth, a "good" or "high" potential rating is needed.

53.     IKEA has selectively offered leadership development opportunities to individuals who have been identified as "high potential."

54.     By way of example, and without limitation, IKEA had in place from at least January 2014 through July 2016 a Leadership Development Program, entitled "Aspire," which, according to IKEA's literature, is "designed to support identified high potential co-Workers."

55.     IKEA has represented to the EEOC that the Aspire program was a training program for "applicants who were perceived to be high potential co-workers," but does not indicate how, by whom, or on what basis an employee was "perceived" as such.

56.     IKEA selected for its Aspire program younger employees in their twenties, and rejected the applications of its older employees.

57.     Younger employees who have successfully completed Defendant's leadership development programs, including Aspire, have been promoted into management level positions.

58.     IKEA has denied Older Coworkers the opportunity to even compete for development and training opportunities.  For example, and without limitation, IKEA did not post or openly seek applicants for the Aspire program that ran through July 2016.

59.     IKEA passes over for promotion more qualified Older Coworkers in favor of substantially younger individuals.

60.     An IKEA Human Resources manager has acknowledged that IKEA has promoted an employee in his twenties into a management level position even though he probably was not ready.

61.     IKEA has demoted or pushed out its older managers and replaced them with substantially younger individuals.

62.     IKEA employees have complained of age discrimination to no avail.

63.     In or about October 2016, complaints of age discrimination in connection with development opportunities and promotion were made to managers at the highest level of the company, including Nabella Ixtabalan, then head of Defendant's US Human Resources, and even global company leaders from Sweden.

64.     No one from IKEA's management responded to or followed up on these complaints of age discrimination.

65.     IKEA has failed to remediate complaints of age discrimination, and tolerates and promotes a corporate culture of age discrimination.

66.     Defendant has since at least January 20, 2016, engaged in a company-wide pattern and practice of age discrimination against its Older Coworkers, including Plaintiff Donofrio.

67.     Defendant has by its actions since at least January 20, 2016, intentionally discriminated against Older Coworkers, including Plaintiff Donofrio.

68.     Defendant's policies and practices have since at least January 20, 2016, resulted in a disparate impact against Older Coworkers, including Plaintiff Donofrio.

69.     Defendant has since at least January 20, 2016, denied leadership development opportunities to Older Coworkers, including Plaintiff Donofrio, because of age.

70.     Defendant has since at least January 20, 2016, failed to promote Older Coworkers, including Plaintiff Donofrio, because of age.

### *Plaintiff Frank Donofrio*

71.     Since February 2011, Plaintiff has been employed by IKEA as an hourly "coworker" working in its Conshohocken retail store.

72.     Plaintiff's performance has been outstanding.  For example, and without limitation:

     a.     Every one of Plaintiff's annual performance ratings has been fully meets or better.

     b.     In 2013 and 2014, Plaintiff was assigned the highest overall rating of "Exceptional Contributor," defined to mean:
- Exhibits leadership by example among peers in all aspect of work performed.
- Makes a significant contribution to the department/location goals.
- Demonstrated performance is outstanding and consistently exceeds established expectations of the position.
- Exceeds stated expectations in the outcomes in work quality, quantity and timeliness.
- Takes on or is given greater responsibility.
- Demonstrates "Excels" in most areas in the competencies, including the key areas within each competency.

     c.     In his 2013 evaluation, Plaintiff was praised by his manager for, among other things, being a "very strong and independent coworker who takes responsibility and pride in [his] everyday work," for being a "great example for anyone," and for training a fellow coworker.

     d.     In his 2014 evaluation, Plaintiff was assigned "excel" for 30 out of 33 individual ratings (the other three were meets).  He was praised by his manager for, among other things, his "energy and enthusiasm," and his

"hard work and dedication."  She wrote: "Being an activities co-worker, you mostly work independently but through the training courses you participated in and the commercial projects you were in charge of, you have shown that you can take on anything and actively work with a team."

e.      In his 2015 evaluation, Plaintiff received an overall score that put him the high end of "Fully Meets Expectations."

f.      Plaintiff twice received recognition as a coworker of the month.

g.      Plaintiff was praised for his achievements as a Project Leader.

h.      Plaintiff received unsolicited appreciation by customers, for which he was recommended for an Ambassador Award.

73.     Notwithstanding Plaintiff's record of excellent performance, IKEA assessed him as lacking in potential for no good or apparent reason.

74.     Notwithstanding that Plaintiff received all individual ratings of either meets or exceeds expectations in his 2015 annual assessment, his then manager evaluated his "identified potential" as "same level" – *i.e.*, the lowest among the three possible categories ("high potential," "good potential" and "same level").

75.     IKEA's Human Resources signed off on this lowest assessment of Plaintiff's potential notwithstanding his two previous annual assessments of "Exceeds Expectations," his previous manager's high praise, including for his energy and enthusiasm, and her expression of confidence that he will "definitely climb the IKEA ladder," and his then manager's overall performance assessment as "fully meets expectations."

76.     Plaintiff repeatedly expressed to IKEA his interest in advancement opportunities and promotion into a management level position.

77.     IKEA rejected Plaintiff for several managerial positions for which he was qualified and applied in favor of a less qualified, substantially younger individual.  For example:

a.     In or around June, 2013, IKEA rejected Plaintiff for the Cook Shop/Activities Shopkeeper position in favor of an external candidate with no IKEA experience more than 20 years younger than Plaintiff.

b.     In or around February, 2014, IKEA rejected Plaintiff for the Home Organization/Lighting Shopkeeper position in favor of a candidate approximately 25 years younger than Plaintiff.

c.     In or around, June 2014, IKEA rejected Plaintiff for a Green Plant Technician position in favor of a candidate approximately 20 years younger than Plaintiff.

d.     In or around March, 2015, IKEA rejected Plaintiff for the Activities Lead position in favor a candidate approximately 20 years younger than Plaintiff.

78.    IKEA managers openly expressed age bias in connection with the decisions to reject Plaintiff's application for management level positions.  For example, and without limitation:

a.     The IKEA manager in charge of the store at which Plaintiff worked told Plaintiff that he was passed over for one of the positions for which he applied in favor of a substantially younger candidate because the younger candidate was "young and energetic."

b.     An IKEA Human Resources representative told Plaintiff that he was not ready for a management position and at the same time told Plaintiff that IKEA had promoted into a management position a coworker approximately 25 years younger than Plaintiff whom the HR representative described as probably not ready for a management position.

c.     Plaintiff's manager told Plaintiff that she was sure that the successful external candidate for a position to which Plaintiff had applied was "young and energetic."

79.    IKEA expressed to Plaintiff that he needed more training before he could become a manager.

80.    This was a pretext for discrimination, as Plaintiff had availed himself of the training opportunities actually made available to him.

81.     Further, IKEA denied Plaintiff training and advancement opportunities because of his age.

82.     For example, IKEA twice rejected Plaintiff's application for its Leadership Development (Aspire) Program, and, it is believed, accepted into the Program only employees in their twenties.  Moreover, and although IKEA told Plaintiff that he should apply again to the Aspire program, IKEA, contrary to its policies, did not post or make known the Aspire program that ran through July 2016.

83.     In or around October 2016, IKEA rejected Plaintiff for the Sales Department Manager – Bedrooms and Children's position.

84.     Plaintiff was qualified for the Sales Department Manager – Bedrooms and Children's position.

85.     Although IKEA interviewed Plaintiff for the position, the interview seemed to be a sham as it seemed predetermined that Plaintiff would not get the position.  Among other things, and without limitation, IKEA had already determined that Plaintiff was not a "good" or "high" potential candidate and the interview was not in accordance with IKEA's usual practices.

86.     IKEA hired for the position an external candidate approximately 20 years younger than Plaintiff (Brian O'Shea).

87.     Plaintiff was as qualified, if not better qualified, for the position than Mr. O'Shea. Among other things, and without limitation, Mr. O'Shea had no experience with IKEA.

88.     IKEA manager Florence Fitzgerald Myers (who had dismissively and improperly appraised Plaintiff as lacking in potential) told Plaintiff that IKEA hired Mr. O'Shea instead of promoting Plaintiff into the position because Mr. O'Shea was "young and energetic."

89.     The reason that IKEA failed to promote Plaintiff into the Manager – Bedrooms and Children's Department was because of his age.

90.     IKEA assessed Plaintiff as lacking in potential because of his age.

91.     IKEA did not identify Plaintiff as "good potential" or "high potential" because of his age.

92.     IKEA passed Plaintiff over for leadership development training because of his age.

93.     As a direct and proximate result of the age discriminatory and unlawful conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

**COUNT I**
**AGE DISCRIMINATIN IN VIOLATION OF THE ADEA – DISPARATE TREATMENT**
**(by Plaintiff Donofrio individually**
**and on behalf of similarly situated Older Coworkers)**

94.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

95.     The ADEA claim of age discrimination – disparate treatment as alleged herein is brought by Plaintiff Donofrio individually and on behalf of similarly situated employees ("Older Coworkers").

96.     Defendant has intentionally discriminated against Plaintiff and Older Coworkers because of their age.

97.     Defendant engaged in a pattern and practice of age discrimination against Plaintiff and Older Coworkers through its policy of promoting younger employees while denying positions to its older employees.

98.     Defendant engaged in a pattern and practice of age discrimination against Plaintiff and Older Coworkers through its policy of providing leadership development opportunities to its younger employees while denying such opportunities to its older employees.

99.     Defendant has denied promotions to Plaintiff Donofrio and Older Coworkers because of their age.

100.    Defendant has denied leadership development opportunities to Plaintiff Donofrio and Older Coworkers because of their age.

101.    Age was a determinative factor in connection with Defendant's decisions to reject for promotion Plaintiff Donofrio and Older Coworkers.

102.    Age was a determinative factor in connection with Defendant's decision to deny leadership development opportunities to Plaintiff Donofrio and Older Coworkers.

103.    As a direct result of Defendant's discriminatory conduct, Plaintiff and Older Coworkers have in the past incurred, and will in the future incur, a loss of earnings and/or earnings capacity, loss of benefits, and other injuries, the full extent of which is not known at this time.

104.    Defendant, by the discriminatory acts set forth herein, has violated the ADEA.

105.    Defendant's violation of the ADEA was intentional and willful under the circumstances and warrant the imposition of liquidated damages.

106.    As a direct and proximate result of Defendant's violation of the ADEA, Plaintiff Donofrio and Older Coworkers have sustained the injuries, damages, and losses set forth herein.

107.    Plaintiff and Older Coworkers are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's age discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

**COUNT II**
**AGE DISCRIMINATION IN VIOLATION OF THE ADEA –**
**DISPARATE IMPACT/LEADERSHIP DEVELOPMENT OPPORTUNITIES**
**(by Plaintiff Donofrio individually**
**and on behalf of similarly situated Older Coworkers)**

108.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

109.    The ADEA claim of age discrimination – disparate impact/leadership development opportunities as alleged herein is brought by Plaintiff Donofrio individually and on behalf of similarly situated employees ("Older Coworkers").

110.    Defendant utilizes practices, policies, and procedures that disparately impact Older Coworkers, including Plaintiff Donofrio, because of age.

111.    Upon information and belief, Defendant's policy and/or practice of identifying the "potential" of its employees on a subjective basis has resulted in a statistically significant disparity in the number of older employees accepted into Defendant's leadership development programs.

112.    Defendant's policy and/or practice of identifying the "potential" of its employees on a subjective basis has had a disparate impact on Older Coworkers, including Plaintiff Donofrio.

113.    Defendant's policy and/or practice of identifying the "potential" of its employees on a subjective basis has caused and causes Older Coworkers, including Plaintiff Donofrio, to be deprived of the benefits of IKEA's leadership development programs and thus to be

discriminated against with respect to the terms, conditions, and privileges of employment because of their age.

114.    Defendant, by its policies and/or practices, has violated the ADEA.

115.    As a direct and proximate result of Defendant's violation of the ADEA, Older Coworkers, including Plaintiff Donofrio, have sustained the injuries set forth herein.

116.    Plaintiff Donofrio and Older Coworkers are now suffering and will continue to suffer irreparable injury as a result of Defendant's age discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

**COUNT III**
**VIOLATION OF THE ADEA –**
**DISPARATE IMPACT/PROMOTION RATES**
**(by Plaintiff Donofrio individually**
**and on behalf of similarly situated Older Coworkers)**

117.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

118.    The ADEA claim of age discrimination – disparate impact/promotion rates as alleged herein is brought by Plaintiff Donofrio individually and on behalf of similarly situated employees ("Older Coworkers").

119.    Defendant utilizes practices, policies and procedures that disparately impact Older Coworkers, including Plaintiff Donofrio.

120.    Upon information and belief, Defendant's policy and/or practice of identifying the "potential" of its employees on a subjective basis has resulted in a statistically significant disparity in the promotion rates of Older Coworkers, including Plaintiff Donofrio.

121.    Upon information and belief, Defendant's policy and/or practice of precluding those who were not identified as "high potential" employees and thus rejected for Defendant's

leadership programs has resulted in a statistically significant disparity in the promotion rates of Older Coworkers, including Plaintiff Donofrio.

122.    The foregoing policies, individually and/or collectively, have had a disparate impact on the promotion rates of Older Coworkers, including Plaintiff Donofrio.

123.    Defendant, by its policies and/or practices, has violated the ADEA.

124.    As a direct and proximate result of Defendant's violation of the ADEA, Older Coworkers, including Plaintiff Donofrio, have sustained the injuries set forth herein.

125.    Plaintiff Donofrio and Older Coworkers are now suffering and will continue to suffer irreparable injury as a result of Defendant's age discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

## COUNT IV
## AGE DISCRIMINATION IN VIOLATION OF THE PHRA
## (by Plaintiff Donofrio individually)

126.    Plaintiff Donofrio incorporates by reference the foregoing allegations of the Complaint as if set forth fully herein.

127.    The PHRA age discrimination claim is brought by Plaintiff Donofrio on an individual basis only.

128.    Defendant has intentionally discriminated against Plaintiff Donofrio because of his age by denying him the opportunity to participate in its leadership development programs, including Aspire.

129.    Defendant has intentionally discriminated against Plaintiff Donofrio because of his age by rejecting him for promotion to the Manager – Bedrooms and Children's position.

130.    Age was a motivating and/or determinative factor in connection with Defendant's decisions to deny Plaintiff the opportunity to participate in its leadership development programs, including Aspire.

131.    Age was a motivating and/or determinative factor in connection with Defendant's decision to reject Plaintiff's application for promotion to the Manager – Bedrooms and Children's position.

132.    Defendant, by the discriminatory acts set forth herein, has violated the PHRA.

133.    As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff Donofrio has sustained the injuries, damages, and losses set forth herein.

134.    Plaintiff Donofrio is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's age discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff, Frank Donofrio, respectfully requests that this Court enter judgment in his favor and against Defendant, IKEA US Retail, LLC formerly known as IKEA US East LLC, and doing business as IKEA:

a.    Declaring this action to be an ADEA collective action properly maintained under 29 U.S.C. § 216(b);

b.    requiring Defendant to provide to Plaintiff the names, date of birth, addresses (including e-mail addresses), current positions, and telephone numbers of all current hourly retail employees of Defendant who, since January 20, 2016, were age 40 or over and rejected for promotion and/or leadership development opportunities;

c.      requiring that notice and opportunity to opt-in be given to all current hourly retail employees of Defendant who, since January 20, 2016, were age 40 or over and rejected for promotion and/or leadership development opportunities;

d.      declaring the acts and practices complained of to be a violation of the ADEA;

e.      declaring the acts and practices complained of by Plaintiff Donofrio on an individual basis to be a violation of the ADEA and PHRA;

f.      enjoining and restraining permanently the violations alleged herein;

g.      awarding compensatory damages to Plaintiff and Older Coworkers to make Plaintiff and Older Coworkers whole for all past and future lost earnings, benefits, and earnings capacity which Plaintiff and Older Coworkers have suffered and will continue to suffer as a result of Defendant's discriminatory conduct;

h.      awarding liquidated damages to Plaintiff and Older Coworkers;

i.      awarding Plaintiff Donofrio compensatory damages to make Plaintiff Donofrio whole for all past and future pain and suffering, emotional distress, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures that Plaintiff has suffered and will continue to suffer as a result of Defendant's age discriminatory conduct.

j.      awarding Plaintiff the costs of this action, together with reasonable attorney's fees;

k.      awarding Plaintiff and Older Coworkers such other damages as are appropriate under the ADEA;

l.      awarding Plaintiff such other damages as are appropriate under the PHRA; and

m.      granting such other and further relief as this Court deems appropriate.

                                **CONSOLE MATTIACCI LAW, LLC**

        BY:

                                _____
                                Stephen G. Console
                                Laura C. Mattiacci
                                Susan M. Saint-Antoine
                                Emily R. Derstine Friesen
                                1525 Locust Street, 9th Floor
                                Philadelphia, PA  19102
                                (215) 545-7676
                                (215) 565-2855 (fax)
                                console@consolelaw.com
                                mattiacci@consolelaw.com
                                santanto@consolelaw.com
                                derstinefriesen@consolelaw.com

                                Attorneys for Plaintiff,
                                Frank Donofrio
                                (*on behalf of himself individually
                                and on behalf of those similarly situated*)

Dated:  February 12, 2018