# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK DONOFRIO,<br>  *on behalf of himself individually*<br>*and on behalf of those similarly situated,*<br>      Plaintiff,<br><br>      v.<br><br>IKEA US RETAIL, LLC<br>      Defendant. | CIVIL ACTION<br>No. 2:18-cv-00599-AB |
| WILLIAM V. ANTONELLI, JR.,<br>  *on behalf of himself individually*<br>*and on behalf of those similarly situated,*<br>      Plaintiff,<br><br>      v.<br><br>IKEA HOLDING US, INC.,<br>IKEA US RETAIL, LLC, and<br>IKEA NORTH AMERICA SERVICES, LLC,<br>      Defendants. | CIVIL ACTION<br>No. 2:19-cv-01286-AB |
| BRANDON PAINE,<br>  *on behalf of himself individually*<br>*and on behalf of those similarly situated,*<br>      Plaintiff,<br><br>      v.<br><br>IKEA HOLDING US, INC.,<br>IKEA US RETAIL, LLC, and<br>IKEA NORTH AMERICA SERVICES, LLC,<br>      Defendants. | CIVIL ACTION<br>No. 2:19-cv-00723-AB |

PLAINTIFFS' ESTIMATED BREAKDOWN OF ATTORNEY'S FEES TIME
SUBMITTED IN SUPPORT OF THEIR MOTION FOR SANCTIONS (DONOFRIO ECF 312)

In connection with their Motion for Sanctions (*Donofrio* ECF 312), and as referenced in Plaintiffs' Proposed Findings of Fact and Conclusions of Law (*Donofrio* ECF 370), Plaintiffs submit the attached Declaration of Susan M. Saint-Antoine. Ms. Saint-Antoine's Declaration provides an estimated breakdown by category or event the resources Plaintiffs' counsel, Console Mattiacci Law, has expended as a result of IKEA's deletion and/or withholding of material evidence in violation of the Court's August 22, 2018 and/or April 29, 2022 Orders.

                              Respectfully submitted,

                              **CONSOLE MATTIACCI LAW, LLC**
                              /s/ Susan M. Saint-Antoine
                              Stephen G. Console
                              Laura C. Mattiacci
                              Susan M. Saint-Antoine
                              Caren N. Gurmankin
                              Evelyn Kallenbach
                              Madison Provorny
                              1525 Locust Street, 9th Fl.
                              Philadelphia, PA 19102
                              (215) 545-7676 (phone)
                              (215) 545-8211 (fax)
                              Attorneys for Named Plaintiffs,
                              Frank Donofrio, Brandon Paine and William Antonelli (*on behalf of themselves individually and on behalf of those similarly situated*)

February 26, 2024

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK DONOFRIO, | : | |
|   *on behalf of himself individually* | : | |
| *and on behalf of those similarly situated,* | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | No. 2:18-cv-00599-AB |
|     v. | : | |
| IKEA US RETAIL, LLC | : | |
|     Defendant. | : | |
| | : | |
| WILLIAM V. ANTONELLI, JR., | : | |
|   *on behalf of himself individually* | : | |
| *and on behalf of those similarly situated,* | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
|     v. | : | No. 2:19-cv-01286-AB |
| IKEA HOLDING US, INC., | : | |
| IKEA US RETAIL, LLC, and | : | |
| IKEA NORTH AMERICA SERVICES, LLC, | : | |
|     Defendants. | : | |
| | : | |
| BRANDON PAINE, | : | |
|   *on behalf of himself individually* | : | |
| *and on behalf of those similarly situated,* | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
|     v. | : | No. 2:19-cv-00723-AB |
| IKEA HOLDING US, INC., | : | |
| IKEA US RETAIL, LLC, and | : | |
| IKEA NORTH AMERICA SERVICES, LLC, | : | |
|     Defendants. | | |

## DECLARATION OF SUSAN M. SAINT-ANTOINE

**I, Susan M. Saint-Antoine, declare as follows:**

    1.    I am an attorney at Console Mattiacci Law, LLC ("CML") counsel for Plaintiffs in these actions. I am authorized to make this Declaration, and do so based on my personal knowledge and review of the files and records kept in these cases.

    2.    CML keeps contemporaneous and descriptive records of time spent on cases, and has done so in these three ADEA collective actions. In connection with Plaintiffs' Motion for Sanctions, and as referenced in Plaintiffs' Proposed Findings of Fact (*Donofrio* ECF 370), I have reviewed the records for purposes of breaking down by category or event resources CML has

1

expended as a result of IKEA's deletion and/or withholding of material evidence in violation of the Court's August 22, 2018 and/or April 29, 2022 Orders.  With the understanding that the Court may hold further proceedings as warranted, these figures are estimates only.  Notably: a) I have tried to limit the breakdown to particular categorizes and events, and have not generally included the many hours spent on things such as strategizing, regularly held update and planning sessions, internal communications, and communications with IKEA counsel;  b) the hourly rates are those charged in the years of the work performed and have not been upgraded to CML's current hourly rates; and c) I have used my judgment and experience working on these cases to apportion time attributable to a particular task contained in a block billing entry.

Further, the **estimates are extremely conservative** in that they do not account for thousands of hours and millions of dollars in attorneys time spent on work that CML **even arguably** would have done anyway regardless of IKEA's failure to comply with the Court's Orders, including, for example and without limitation:  all of the work performed before September 7, 2018; drafting additional complaints; researching and effectuating additional administrative actions; defending against defendant IKEA's motion to dismiss disparate impact claims; defending against IKEA's motion to clarify the temporal scope of the Order and "class" eligibility; unsealing the documents marked by IKEA as "confidential;" communications with and general development of the named plaintiffs and opt-in cases, other than in connection with the specific example of preparing and defending their depositions; issuing written discovery on behalf of all opt-ins; discovery disputes and moving to compel opt-in discovery; responding to written discovery issued to plaintiffs/opt-ins; damages discovery; motion practice in connection with IKEA motion for protective order/appointment of Special Master in connection with Ellie Tattar; legal research on failure to promote/ADEA collective action cases; reviewing documents produced by IKEA; and defending against IKEA's motion to quash subpoenas to third parties.

3.      Overall, CML has spent an extraordinary number of hours and resources litigating these three ADEA collective actions trying to put the pieces of the puzzle together, while IKEA has withheld evidence of its written and timely company-wide goal of age discrimination communicated by IKEA's US Head of Human Resources, to which all employees were subjected.  Essentially, it took more than five years to end up after the close of discovery with the evidence of systemic age discrimination that IKEA was ordered to produce by September 7, 2018, *i.e.,*  before moving for and proceeding as a collective action, notifying current and former employees of their eligibility to opt-in, and prosecuting these ADEA collective actions.  The Ixtabalan email with attachment that I testified to at Day 2 of the sanctions hearing (IKEA-101714, attaching IKEA-101724-101763, submitted with February 16, 2024 letter to the Court) is a good example of "smoking gun" evidence that IKEA was to "look and look and look" for and produce, but did not.  Had IKEA produced it by September 7, 2018 as required by the Court's Order, it would have been the centerpiece of these collective actions and would have disproven – and perhaps even precluded – IKEA's false and repeated representations that its age goals were abandoned in 2012 and retracted.

4.      Briefly, IKEA-101714 contains a January 4, 2016 email from Nabeela Ixtabalan (then head of IKEA US Human Resources) to, without limitation Catherine Blair (then US Succession Manager), and Kishorn Henry (Human Resources Business Partner at Conshohocken, the store where Mr. Donofrio worked); and attaching the "FY16 US D&I Recap," IKEA-

2

101724-101763). Ms. Ixtabalan, Ms. Blair and Mr. Henry were all identified in Plaintiff's May, 2018, Initial Disclosures; Ms. Ixtabalan and Ms. Blair were specifically identified as witnesses to be deposed. The US D&I Recap, without limitation:

- Discusses the IKEA global D&I approach, and integrating D&I within the U.S.;
- discusses the "aging population" and challenges of a "multigenerational workplace;"
- states as a Key Takeaway: "…**We need to spot and prioritize potential and move them faster through our development pipeline, increase the number of coworkers under 34 in exempt management**;" and
- states among the **US Goals by 2018**: "**Increase the percentage of coworkers under 34 in salaried exempt positions to be more reflective of the under 34 coworker population in our stores.**"

5. Had IKEA produced the FY16 US D&I Recap by September 7, 2018 as required by the Court's August, 2018 Order, CML would have litigated these collective actions differently. CML certainly would have used it prominently and followed up on it going forward, and also would have avoided expending a tremendous amount of resources addressing IKEA's persistent denial of age-based personnel goals and attempts to block discovery of documents evidencing the same. As stated in Plaintiffs' proposed Findings of Fact (ECF 370), Plaintiffs have incurred approximately $5,372,043 in attorney's fees time since September 7, 2018, having to litigate these collective actions without the benefit of the smoking gun evidence that IKEA failed to produce as ordered.

6. Had IKEA produced by September 7, 2018, the Ixtabalan 2016 email with D&I recap and 2018 age goal, CML would have **used the document, and expended far less effort, in support of conditional certification.** CML expended approximately **$190,466** in attorney's fees times in having to move in October 2018, brief and argue in favor of conditional certification in *Donofrio* without the benefit of a written company-wide policy of age discrimination, communicated by IKEA's US Head of Human Resources, to which all employees were subjected during the period in which they were rejected for promotion. Mr. Donofrio would have met the first hurdle of proceeding with an ADEA collective action with far less effort had IKEA produced the smoking gun document in September, 2018 as ordered, rather than more than five years later in December, 2023.

Of the approximate $190,466 in attorney's time, Plaintiff expended approximately **$78,129** in working on the Reply Brief to address IKEA's Opposition, which argued – incredibly, in light of what we know now – that IKEA had abandoned its age diversity goals by 2012 and had retracted them without taking any action to implement them. *See, e.g.,* ECF 41 at p. 4.

7. **CML could have avoided having to file a first Motion for Sanctions in 2018 for IKEA's violation of the August, 2018 Order.** CML expended approximately **$37,603** in attorney's fees time in addressing in 2018, what we only knew at the time to be IKEA's *late* production of documents relating to IKEA's age-based personnel goals, and the suspicions that IKEA had not fully complied with the Court's August 22, 2018 Order. On October 18, 2018, Plaintiff's counsel sent a letter to IKEA asking for a written explanation as to, e.g., "What efforts

3

did Defendant undertake to search for documents relating to age-based personnel goals in response to Plaintiff's document requests and in response to the Court's Order? What other documents exist pertaining to these (and other) age-based personnel goals?" Rather than address Plaintiff's questions, IKEA's counsel responded with a letter that threatened to go after Plaintiff for fees and costs if he addressed the matter with the Court. *See Donofrio* ECF 32 (Plaintiff's Motion for Sanctions against IKEA for its violation of the August, 2018 Order and asserting: "Plaintiff has good reason to question IKEA's forthrightness as to the existence and production of documents called for by the Court Order.") This effort could have been avoided had IKEA complied with the Court's August 22, 2018 Order (ECF 29) in the first place and produced documents relating to its age-based personnel goals in September, 2018 as required.

   8. **The evidence would have undermined, if not effectively precluded, IKEA's First Motion for Summary Judgment in 2018 (ECF 39).** From November 8, 2018 through December 20, 2018, CML had to expend approximately **$98,377** in attorney time to oppose IKEA's motion for summary judgment, which was based on arguments that the FY16 US D&I Recap proves to be false. IKEA's motion, filed before the case was conditionally certified, repeats its arguments that "age goals" not in existence since 2012 had been retracted, and to the extent that there was evidence otherwise, they were "stray remarks" made in individual stores. Had IKEA produced by September 7, 2018 the documents as required by the Court Order, including the FY16 US D&I Recap, it could not have reasonably moved for summary judgment and made those representations to the Court.

   9. **After the Court on May 16, 2019 granted conditional certification and authorized the case to proceed as a collective action, the evidence would have been available to current and former eligible IKEA employees for purposes of considering whether to opt in.** As noted above, CML certainly would have used IKEA's FY16 US D&I Recap and its 2018 age goal as the centerpiece of its motion to proceed as a collective action; consequently, the Court likely would have featured it in its Opinion conditionally certifying the case. *See Donofrio* ECF 70, 71. The Court recognized that its "opinion could be very helpful in their deciding whether to opt-in or not." *See Donofrio* ECF (letter regarding notice, with Plaintiff citing Transcript from Sep. 12, 2019 Conference at 36:10-37:13). It ordered that the Notice to eligible opt-ins must not attach the Court's Opinion, but that the Notice must explain where the Order and Opinion might be viewed. *Donofrio*, ECF 97.

   During the period from approximately January 6, 2020 to February 13, 2020, Notice in the *Donofrio*, *Paine and Antonelli* collective action cases was posted to a Third Party Administrator's Portal and mailed to 711 current and former employees eligible to join. The Notice informs the employee that the case file is publicly available (at the courthouse and on-line) and that they may contact the Third Party Administrator if they want to read the Court's Opinion conditionally certifying the case. It also gave the contact information for CML and informed the eligible employees that they may contact CML if they had any questions as to whether to join. Of the 710, there were 78 current or former IKEA employees filed consent to join forms in one or more of the three collective actions.

   Should the Court determine that IKEA's violation of its August 22, 2018 Order and failure to produce smoking gun evidence of IKEA's company policy of age discrimination

4

unfairly deprived IKEA's current and former employees who did not opt in of information material to their decision, and that Notice must be reissued, CML will have to undertake again a notice process for which it expended approximately **$107,955** in attorney's and paralegal time getting out the Notice (which included, *e.g.,* checking all addresses, tracking the consent forms, setting up a web portal with a Third Party Administrator, negotiating the information on the portal, mass mailings, and addressing undeliverable notices), as well as **$23,295.26** in postage and fees to the Third Party Administrator.

Similarly, of the 78 Opt-Ins, twenty have since been dismissed, with some dropping out as the litigation dragged on for years. Should the Court determine that IKEA deprived them, too, of information material to their decision whether to continue participating and that IKEA has benefited from its violation of the Court's Order by reducing the number of Opt-Ins, there will be expenses incurred in re-notifying them, as well.

10. **Had IKEA produced by September 7, 2018, the Ixtabalan 2016 email with D&I recap and 2018 age goal, CML would have issued written discovery that focused on it.** The Court on January 11, 2021, issued a Scheduling Order for second stage merits discovery. *Donofrio*, ECF 199. CML issued generally uniform discovery requests pertaining to the individual opt-ins and "joint and consolidated" discovery pertaining to issues of IKEA's systemic age discrimination. IKEA objected to every one of Plaintiffs' "joint and consolidated" document requests on the topic of diversity on the grounds, *e.g.,* that it "fails to identify the requested documents with reasonable particularity." If IKEA had complied with the Court's Order and CML had the benefit of the age-based personnel goals documents such as the Ixtabalan 2016 email with D&I recap and 2018 age goal**,** CML would have focused and followed up in particular on the information contained in the recap and the articulation of the goal, and issue requests identifying documents with more particularity. For example, Step 2 of the "Six Steps for Integrating Diversity and Inclusion Into Our Business" states two particular things: 1) Add D&I metrics to existing HR Scorecard with monthly reporting; and 2) Share national D&I KPI's 1x per tertial. We would have explored the extent to which Human Resource employees involved in staffing and promotion selection decisions were evaluated on whether the selections helped achieve IKEA's 2018 goal of increasing the number of those under 34 in management positions. To what extent did the goal apply to or impact selections for management support level positions? What was on the scorecard? To whom was the scorecard information distributed or shared? What were the consequences of a positive or negative score? What were the national D&I KPI's? Who at IKEA was involved in their determination? Was IKEA global personnel involved in their formulation or review? Regarding Step 6, "Measure diversity and inclusion," this document lays out: 1. Continue to evolve how we measure and analyze our D&I work through adding KPI's for: Turnover by Age, Recruitment & Succession Data by Age. We would have focused written discovery in particular on the role of NA D&I Network in integrating D&I goals and KPIs at the store level. We would have issued Requests for Admission with a focus on the 2018 goal to increase the number of under 34 year olds in exempt manager positions.

From January 11, 2021 through the October 27, 2021 conference on Plaintiff's motion to compel, CML expended approximately **$120,776** in drafting the "joint and consolidated" written discovery, reviewing IKEA's responses, following up on deficiencies, meeting and conferring

5

with opposing counsel, filing a motion to compel, and preparing for and attending the status conference on Plaintiff's motion. CML should be given the opportunity to reissue written discovery, and reimbursed for the time spent on earlier efforts made without the smoking gun evidence that IKEA failed to produce.

**12.     CML should have been able to negotiate ESI custodians and search terms: a) with knowledge of emails that actually existed and would be searched and produced: and b) with the benefit of the documents that IKEA was ordered to produce by September 7, 2018, including the Ixtabalan 2016 email with D&I recap and 2018 age goal.** Had IKEA produced the Ixtabalan 2016 email with D&I recap and 2018 age goal, we would have included search terms to capture information regarding in particular such things as the D&I Network and the HR scorecard. For example, we would have run a search for "diversity" and "scorecard" or "network." We would have included additional custodians, for example, Stevie Lewis (who is identified as a cc on the Ixtabalan email), and a sampling of Diversity Network ambassadors. Had we known that emails had been deleted, we could have participated in the attempts to capture the information from other custodians whose emails did exist or had not yet been deleted, such as (perhaps?) IKEA global D&I employees (other than Sari Brody, whose emails IKEA admittedly deleted), such as Antonio Cavalli and Tiffani Wang (believed to be among Ms. Brody's direct reports), as well as Peter List – the Global Head of E, D &I after Sari Brody, and Petra Hesser and Ulrika Bissert – believed to be the Global HR Managers to whom Ms. Brody reported. Moreover, we could have pointed to the existence of the Ixtabalan 2016 email with D&I recap and 2018 age goal as concrete evidence of IKEA's timely age goals to oppose IKEA's opposition to searching high level custodians, such as Lars Peterson (US CEO) on the grounds that we were on a fishing expedition.

Instead, CML expended approximately **$63,254** in attorney's fees time during the period from approximately September 17, 2021 through April 18, 2022, to draft proposed ESI search terms and proposed custodians to address the parties' written discovery disputes, negotiate ESI custodians and search terms, research IKEA's arguments on proportionality, make arguments to the Court without the benefit of the smoking gun evidence or even the knowledge of which emails existed and could be searched. IKEA should be required to renegotiate and run new searches of existing ESI, and CML reimbursed for resources previously expended.

13.     **CML should have been able to select and depose IKEA witnesses with the benefit of the documents IKEA produced after the close of discovery in December 31, 2023, rather than by September 7, 2018 or December, 2022 as required by either the Court's August 22, 2018 Order or the April 29, 2022.**

A.  CML reviewed and selected documents for, and took, the **depositions of the four custodians** whose emails IKEA admittedly deleted and then supposedly "reconstituted" in part and produced in December, 2023: Christof Stein (June 23, 2023); Sari Brody (July 17, 2023); Nabeela Ixtabalan (August 9, 2023); and Kirstie Olafsson (August 31, 2023). CML spent approximately 76 hours/**$67,200** in attorney time preparing for and taking these four depositions, and our firm incurred **$6,617** for the stenographic and video recording. Had we had the documents produced by IKEA in December, 2023, we would have questioned the witnesses on them at deposition, including the documents referenced in Laura Mattiacci's December 15, 2023

6

letter to the Court (ECF 343) and the smoking gun Ixtabalan 2016 email with D&I recap and 2018 age goal.  IKEA should be required to produce these witnesses for deposition again, and CML reimbursed for prior resources expended.

       B.  From April through August, 2023, CML deposed 16 other IKEA current or former employee witnesses without the benefit of the documents produced by IKEA in December 31, 2023, including the Ixtabalan 2016 email with D&I recap and 2018 age goal.  Several witnesses, including the US Heads of HR before and after Ixtabalan, testified that they could not recall specifics in connection with diversity, or their testimony was equivocal
  Had IKEA produced the Ixtabalan 2016 email with D&I recap and 2018 age goal, <u>we would have questioned all of the witnesses on it</u> including, regarding their awareness and implementation of the US Goal by 2018 to "[i]ncrease the percentage of coworkers under 34 in salaried exempt positions to be more reflective of the under 34 coworker population in our stores."   CML expended approximately **$183,236** in attorney's and paralegal time, as well as **$22,078** in recording costs, for these witnesses for which CML should be reimbursed and CML permitted to depose again.

       C. Had IKEA produced the December 31, 2023, documents including the Ixtabalan 2016 email with D&I recap and 2018 age goal, we would have selected additional people to depose, including, without limitation: Stevie Lewis, who is copied on the Ixtabalan email; Kishorn Henry (HR at Conshohocken, also copied on the email); a D&I Network Ambassador recipient, such as Lauren Burinskas; IKEA US CEO Lars Peterson; and Global IKEA employees including  Peter List – believed to be the Global Head of E, D &I after Sari Brody, and Petra Hesser and Ulrika Bissert – believed to be the Global HR Managers to whom Ms. Brody reported.  IKEA should be required to produce and pay for the depositions of these witnesses.

    14.    **Had IKEA produced the Ixtabalan 2016 email with D&I recap and 2018 age goal, documents, we would have shared them with the Opt-Ins before they were deposed.**  CML has worked with each opt-in individually on their case.  Among other things, we shared and discussed key evidence in preparation for their depositions.  Generally speaking, when each was deposed, IKEA asked each Opt-In why they thought they were rejected for promotion.  Each Opt-In was entitled to know that as of 2016, IKEA as a company had a goal to increase the number of coworkers younger than  34 in management positions.  CML has expended approximately **$270,733** in time devoted to defending the depositions of the opt-in plaintiffs, such as scheduling emails, meetings, client communications, follow up, deposition preparation, defending the depositions, reviewing the transcripts and creating digests.  These Opt-Ins should have the option of being deposed again.  In the alternative, IKEA should be precluded from using their deposition testimony addressing the basis of or support for their claims.

    15.    The Ixtabalan 2016 email with D&I recap and 2018 age goal**,** states a company-wide policy of age discrimination that alone is sufficient evidence to establish a pattern or practice of age discrimination to which all IKEA employees were subjected and thus similarly situated.  **Had IKEA produced the document as ordered in September 2018, it would have obviated the need for a statistical expert report to support a finding of IKEA's pattern or practice of age discrimination.**  IKEA should be required to reimburse CML for the

7

considerable resources expended on statistical analysis, including attorney time and expert fees, which I have not yet calculated but roughly estimate to be **in excess of $1million**.

      16.      Finally, had IKEA not deleted and/or withheld the documents in violation of the Court's August 22, 2018 and April 29, 2022 Orders, CML would not have had to expend its resources on **addressing their violations and moving for sanctions**. CML has expended approximately $**552,737** in attorney's fees time from my January 3, 2023 letter to IKEA counsel first raising the issue of IKEA's failure to search emails of custodians Ixtabalan, Brody, Stein and Olafsson, through Day 2 of the sanctions hearing. These expenditures are *still continuing,* as IKEA has yet to produce the unaltered metadata for its December 2023 production, and has resisted efforts to depose a representative from its e-discovery vendor, Lighthouse.

      I hereby declare under penalty of perjury, that the foregoing statements made by me are true and correct to the best of my knowledge, information and belief. I understand that the foregoing statements are made subject to the penalties of 28 U.S.C.§1746.

Dated:  February 26, 2024                                       */s Susan M. Saint-Antoine*
                                                                         Susan M. Saint-Antoine

## **CERTIFICATE OF SERVICE**

      I, Susan Saint-Antoine, hereby certify that on this date, I caused a true and correct copy of the foregoing, Plaintiffs' Estimated Breakdown of Attorney's Fees Time Submitted in Support of their Motions for Sanctions (Donofrio ECF 312) to be served on all counsel of record via the Court's ECF system.

Dated: February 26, 2024

                                                        *s/ Susan Saint-Antoine*
                                                        Susan Saint-Antoine